UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

**NOT FOR PUBLICATION**

RAY GARY,

       Plaintiff,

v.                                                                              Civ. Action No. 02-2589 (KSH)

THE AIR GROUP, INC.,

       Defendant.                                                **OPINION**

**Katharine S. Hayden, U.S.D.J.**

This matter comes before the Court on defendant's motion for summary judgment (docket entry # 34). After considering the parties' respective briefs and supplemental submissions, defendant's motion for summary judgment is **denied**. Defendant's motion to strike or judicially limit punitive damages is also **denied.**

## I.    Procedural History and Factual Background[1]

Plaintiff Ray Gary ("Gary") is a New Jersey resident and former employee of defendant The Air Group, Inc. ("The Air Group"), a California corporation that provides services for private aircraft, including sales and acquisition, charter management, and maintenance. (Final Pretrial Order, docket entry #27, Stipulation of Facts ¶¶ 2-3.) Edward G. Rosenblum is the founder and majority shareholder of Rose Aviation. (Rosenblum Aff. ¶ 1.) Mark Shea was the

---

[1] The record at summary judgment consists of: (1) the Reply Affidavit Of Todd H. Girshon In Support Of Defendant's Motion For Summary Judgment with Exhibits A-H; (2) the Affidavit of Ray Gary with Exhibit A; (3) the Affidavit of Robert J. Gallop with Exhibits A-D; (4) the Affidavit Of Todd H. Girshon In Support Of Defendant's Motion For Summary Judgment with Exhibits A-H; (5) the Affidavit of Edward G. Rosenblum; (6) the Affidavit of Mark Shea; (7) the Final Pretrial Order; (8) the Deposition of Ray Gary; and (9) the Deposition of Harold Dennis Turville.

1

Director of Operations for The Air Group from approximately December 1997 to October 2004. (Shea Aff. ¶ 1.) At all times relevant to this case, Dennis Turville was The Air Group's Chief Pilot and Gary's immediate supervisor. (Id. at ¶ 3.)

In March 1999, Rose Aviation entered into a charter agreement with The Air Group in connection with the Cessna Citation, an aircraft owned by Rose Aviation. (Rosenblum Aff. ¶ 2.) Gary was hired by Rose Aviation to co-pilot the Cessna Citation in September 2000, but the plane was grounded in October 2000 when the pilot-in-command resigned. (Id. at ¶ 3-4.) In March 2001, Gary, with Rosenblum's consent, terminated his employment with Rose Aviation and joined The Air Group as an at-will employee. (Final Pretrial Order, Stipulation of Facts ¶¶ 2-3.)

In July 2001, The Air Group hired James O'Neal Johnson, Jr. as pilot-in-command for the Cessna Citation. (Final Pretrial Order, Stipulation of Facts ¶ 18.) After spending time with Johnson preparing for a "route check" safety procedure, Gary alleges that he believed Johnson to be unqualified to pilot the Cessna Citation. (Gary Aff. ¶ 4-6.) Gary claims that Johnson: (1) did not have the requisite flight time required by the FAA; (2) was unfamiliar with FAA mandated basic flight procedures; (3) did not properly proceed with the FAA mandated "Pre-Flight Checklist;" (4) was unfamiliar with the airspace into which he was planning to fly; and (5) was unfamiliar with how to obtain departure clearance at certain airports. (Id. at ¶ 6.) Gary asserts he reasonably believed that if The Air Group permitted Johnson to fly, Johnson would be endangering passengers, crew, the public, and the aircraft. (Id. at ¶ 4.) Gary also alleges he believed Johnson had violated and/or would violate FAA regulations. (Id. at ¶ 6.)

Gary claims that he called his immediate supervisor, Dennis Turville, on August 30, 2001, to express his concerns about Johnson. (Id. at ¶ 3.) Gary alleges he told Turville that

Johnson had violated safety regulations and was unqualified to pilot the Cessna Citation. (Id. at ¶ 6.) Gary asserts that Turville fired him by telephone approximately six hours after the August 30 phone conversation. (Id. at ¶ 9.) The Air Group claims that Gary was fired about a week later on September 4, 2001. (Rosenblum Aff. ¶ 16.) Gary alleges The Air Group fired him in retaliation for, among other things, his report of Johnson's lack of qualifications as well as Johnson's past and potential future FAA violations. The Air Group contends it fired Gary based solely on the recommendation of Rosenblum.

On April 29, 2002, Gary filed a complaint in state court alleging that his termination violated New Jersey's Conscientious Employee Protection Act ("CEPA"). On May 29, 2002, The Air Group removed the case to federal court on diversity grounds. It then moved to dismiss Gary's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on the ground that his state law whistleblower claim was preempted by federal law, specifically the ADA, 49 U.S.C. § 41713, as amended by the WPP, 49 U.S.C. § 42121. The District Court granted The Air Group's motion to dismiss on August 8, 2002, and Gary appealed. The Third Circuit reversed, finding that Gary's claim was not preempted by the ADA.

## II.     The Air Group's Motion for Summary Judgment

### A.     Standard

Federal Rule of Civil Procedure 56(c) authorizes a court to enter summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The burden is on the party seeking summary judgment to prove that there are no genuine disputes of material fact. McCarthy v. Recordex Service, Inc., 80 F.3d 842, 847 (3d Cir. 1996). "Moreover, any inferences to be drawn must be

viewed in the light most favorable to the party opposing summary judgment." Id. When the non-moving party's allegations conflict with those of the moving party, the non-moving party must receive the benefit of the doubt. Goodman v. Mead Johnson & Co., 534 F.2d 566, 573 (3d Cir. 1976). The Court's role, however, is "not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

### B.   New Jersey's Conscientious Employee Protection Act

New Jersey's Conscientious Employee Protection Act, N.J. Stat. § 34:19-1 *et seq.*, was designed to protect employees who are fired in retaliation for whistle-blowing activities. "CEPA codified the common-law cause of action, first recognized in Pierce v. Ortho Pharm. Corp., 84 N.J. 58, 72 (1980), which protects at-will employees who have been discharged in violation of a clear mandate of public policy. Thus, the CEPA establishes a statutory exception to the general rule that an employer may terminate an at-will employee with or without cause." Higgins v. Pascack Valley Hosp., 158 N.J. 404, 417-418 (1999). CEPA applies to three kinds of retaliatory situations, two of which are at issue here. N.J. Stat. § 34:19-3(a)(1) provides relief where the employee "discloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer, or another employer, with whom there is a business relationship, that the employee reasonably believes is in violation of a law, or a rule or regulation promulgated pursuant to law." N.J. Stat. § 34:19-3(c) provides relief where the employee "objects to, or refuses to participate in any activity, policy or practice which the employee reasonably believes is in violation of a law, or a rule or regulation promulgated pursuant to law."

An employee who brings a retaliatory discharge claim under CEPA must show that: (1) he or she reasonably believed that his or her employer's conduct was violating either a law, rule,

4

or regulation promulgated pursuant to law, or a clear mandate of public policy; (2) he or she "blew the whistle" or refused to participate with the employer's conduct; (3) an adverse employment action was taken; and (4) a causal connection exists between the whistle-blowing activity and the adverse employment action. Dzwonar v. McDevitt, 177 N.J. 451, 462 (2003). If an employee establishes a prima facie case of discriminatory retaliation, the burden shifts to the employer to advance a legitimate, nondiscriminatory reason for the adverse employment decision. Bowles v. City of Camden, 993 F. Supp. 255, 262 (D.N.J. 1998). Once the employer provides a legitimate reason for the adverse employment action, the burden shifts back to the employee to "raise an issue of fact regarding whether the [employer's] proffered explanation is pretextual or whether retaliatory discrimination was more likely than not a determinative factor in the decision." Id.

        C.       **Gary's Prima Facie Case Under N.J. Stat. § 34:19-3(a)(1) and (c)**

Gary contends he has established a prima facie case of retaliatory discharge because: (1) he reasonably believed that Johnson's conduct violated FAA regulations; (2) he "blew the whistle" during his telephone conversation with Dennis Turville or, in the alternative, he refused to fly with Johnson; (3) his employment was terminated; and (4) the temporal proximity between the protected conduct and the discharge sufficiently proves a causal connection. (Pl.'s Opp'n Br. at 4-10.) The Court concludes that Gary has established a prima facie case under N.J. Stat. § 34:19-3(a)(1).

As a threshold matter, the court or the employee bringing a CEPA claim "must identify a statute, regulation, rule, or public policy that closely relates to the complained-of conduct." Dzwonar, 177 N.J. at 463. Gary bases his CEPA claim on Johnson's alleged violations of

5

Federal Aviation Regulation ("FAR") § 91.103. FAR § 91.103, part of the FAA's General Operating and Flight Rules, provides:

> Each pilot in command shall, before beginning a flight, become familiar with all available information concerning that flight. This information must include--
>
> (a) For a flight under IFR or a flight not in the vicinity of an airport, weather reports and forecasts, fuel requirements, alternatives available if the planned flight cannot be completed, and any known traffic delays of which the pilot in command has been advised by ATC;
>
> (b) For any flight, runway lengths at airports of intended use, and the following takeoff and landing distance information:
>
> (1) For civil aircraft for which an approved Airplane or Rotorcraft Flight Manual containing takeoff and landing distance data is required, the takeoff and landing distance data contained therein; and
>
> (2) For civil aircraft other than those specified in paragraph (b)(1) of this section, other reliable information appropriate to the aircraft, relating to aircraft performance under expected values of airport elevation and runway slope, aircraft gross weight, and wind and temperature.

Gary asserts he reasonably believed that Johnson's conduct violated this provision because he perceived that Johnson did not familiarize himself with the landing distances for the destination airport, the procedures of Class B and D airspace, the fuel requirements to the destination airport, and the air traffic control procedures and delays in New York airspace. (Gary Aff. ¶ 6.) The Air Group responds to Gary's contentions by arguing that Gary could not have reasonably believed that Johnson's conduct violated FAR § 91.103 because he admitted in his deposition testimony that the "route check" flight was governed by Visual Flight Rules and not Instrument Flight Rules. (Def.'s Reply Br. at 3-4.)

    The Court's role at the summary judgment stage in evaluating this first prong of the prima facie case is limited. Its function is to determine whether there "is a substantial nexus between the complained-of conduct and a law or public policy identified by the court or the

plaintiff." Dzwonar, 177 N.J. at 464. If this Court finds the substantial nexus test satisfied, "the jury then must determine whether the plaintiff actually held such a belief and, if so, whether that belief was objectively reasonable." Id. A plain reading of FAR § 91.103 indicates that The Air Group's argument only applies to FAR § 91.103(a) and does not deal with Gary's allegations about Johnson's conduct with regards to the landing distances for the destination airport and the fuel requirements to the destination airport, both of which fall under FAR § 91.103(b). Since several of Gary's allegations directly implicate the provisions of FAR § 91.103(b), the record at summary judgment is sufficient to satisfy the substantial nexus test.

To establish the second prong of his prima facie case, Gary need only allege sufficient facts to support an inference that he "blew the whistle" or, in the alternative, he refused to participate in prohibited activity. N.J. Stat. § 34:19-3(a)(1) provides relief where the employee discloses or threatens to disclose prohibited activity to a supervisor, and N.J. Stat. § 34:19-3(c) provides relief where the employee objects to or refuses to participate in prohibited activity. Dennis Turville was clearly Gary's supervisor within the meaning of N.J. Stat. § 34:19-2(d), and Gary's allegation that he reported Johnson's conduct to Turville during a telephone conversation on August 30, 2001 satisfies the second prong. (Gary Aff. ¶ 4.) As to the third prong of Gary's prima facie case, there is no question that an adverse employment action was taken when Gary was fired.

Gary contends he has established the causal connection prong of his prima facie case because of the temporal proximity of his phone conversation with Turville to his firing. (Pl.'s Opp'n Br. at 10-12.) Ordinarily, the fact that an adverse action occurs after the protected activity will be insufficient to establish a causal connection; however, temporal proximity on its own can support an inference of causation where the timing is "unusually suggestive". Young v. Hobart

7

West Group, 385 N.J. Super. 448, 467 (App. Div. 2005). Gary alleges he "blew the whistle" by reporting Johnson's conduct to Turville at 12:00 p.m. on August 30, 2001, and that he was fired approximately six hours later by Turville. (Gary Aff. ¶¶ 3-7.) Gary argues that because his allegations place the temporal proximity of his phone conversation with Turville to his firing at six hours, this is one of the extraordinary cases where the timing of the employee's termination suggests causation. The Court is not convinced on that basis -- all by itself, the temporal proximity would not be unusually suggestive of causation; however, a combination of the alleged temporal proximity and the factual inconsistencies that arise from documents in the record, which the Court addresses below, bolster Gary's showing as to the causation prong.

The Air Group argues that Gary fails the causation prong because Shea, the decision-maker, had no knowledge of Gary's phone call to Turville and was acting at the behest of Rosenblum. (Def.'s Reply Br. at 8-9.) The Air Group's causation argument would be persuasive were it not for inconsistencies in the record as to the circumstances surrounding Gary's termination. The Air Group reads Maimone v. City of Atl. City, 188 N.J. 221 (2006) correctly. There, the defendant argued that the plaintiff could not prove causation based solely on temporal proximity because the plaintiff had not presented direct evidence that the decision-maker had knowledge of the plaintiff's whistle-blowing. Id. at 239. The court rejected the defendant's argument because the record contained circumstantial evidence the decision-maker had knowledge of plaintiff's whistle-blowing. Id. The Air Group fails to recognize, however, that in addressing the causation prong the Maimone court also considered "evidence that would support a finding that the reason defendants gave for plaintiff's transfer to patrol was pretextual." Id. at 239. This Court finds itself in a similar position. Evidence that would support a finding

that Gary's termination was pretextual is pertinent to any determination of whether Gary has sufficient evidence to withstand summary judgment.

In short, if there are genuine issues of material fact concerning how and why Gary was fired, this Court cannot simply ignore them. And in fact there are documents in the record that point to two different dates for Gary's termination. As the party moving for summary judgment, the burden is on The Air Group to prove that there are no genuine disputes of material fact. This Court is not satisfied that The Air Group has sufficiently addressed let alone resolved the disparate termination dates set forth in the record, and given the temporal connection that Gary's case relies on, his termination date is important. As a result, the Court is constrained to find that Gary has satisfied the causal connection prong and has adduced evidence that supports a prima facie showing.

      **D.**    **The Air Group's Legitimate, Nondiscriminatory Reason**

If an employee establishes a prima facie case of discriminatory retaliation, the burden shifts to the employer to advance a legitimate, nondiscriminatory reason for the adverse employment decision. Bowles, 993 F. Supp. at 262. The Air Group advances Rosenblum's September 4, 2001 recommendation that Gary be fired as its legitimate non-retaliatory reason. Rosenblum also testified that The Air Group terminated Gary's employment based entirely on his recommendation. (Rosenblum Aff. ¶¶ 15-17.)

This contention weakens The Air Group's overall argument that the specific calendar date of Gary's termination is an irrelevant non-material fact. (Def.'s Reply Br. at 9-10.) Simply put, record support that he was fired earlier creates a material issue about how significant Rosenblum's recommendation might have been. "Evidence of inconsistencies and/or anomalies in the record can support an inference that the employer did not act for its stated reasons."

9

Bowles, 993 F. Supp. at 266. Gary points to his own testimony that he complained about Johnson and was fired six hours later. Then there is the response to Question 9 of Plaintiff's Request for Admissions, Plaintiff's Exhibit 41, where The Air Group admitted that Gary's termination date was on or about August 30, 2001. (Gallop Aff. at Ex. B.) Gary's Exhibit 22, the Request for Wage and Separation Information, appears to place the date of Gary's unemployment benefits application on September 2, a full 2 days before The Air Group says he was fired. (Pl.'s Opp'n Br. at Ex. C.) An unemployment claim that appears to have been filed on September 2 could not stem from a recommendation that occurred on September 4. The Court is not saying that this defeats what The Air Group has produced by way of testimony and other evidence showing that Gary was fired on September 4, 2001. Rather, we have a direct clash of facts that falls decidedly under the province of a fact finder.

**III.     The Air Group's Motion to Strike or Judicially Limit Punitive Damages**

The inconsistencies arising from documents in the record also dissuade the Court from granting The Air Group's motion to strike or judicially limit punitive damages. The motion is denied as premature given the ruling on summary judgment.

**IV.     Conclusion**

For the foregoing reasons, The Air Group's motion for summary judgment is **denied**. The Air Group's motion to strike or judicially limit punitive damages is also **denied**. An appropriate order will be entered.

Dated: September 28, 2007               /s/  Katharine S. Hayden

                                        Katharine S. Hayden, U.S.D.J.

10